UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MICHAEL ALLYN CONNER and                                      No. 11-11696 ta13
LYNDEE CHRISTINE CONNER,

    Debtors.

**OPINION**

Before the Court is a supplemental fee application, filed by debtors' counsel after the Debtors made their final plan payment. The chapter 13 trustee objected to the application based on, inter alia, laches. The Court concludes that the fees should be allowed under § 330[1] and as a § 503(b)(2) administrative expense, but that the timing of the application may affect collectability of the fees.

I.    FACTS[2]

Debtors filed their bankruptcy petition on April 15, 2011, and confirmed a Chapter 13 plan in September 15, 2011. The plan provides:

> 3.1 **Payment of Section 507(a)(2) claims.** Trustee will pay in full all allowed administrative claims and expenses pursuant to section 507(a)(2) as set forth below, unless the holder of such claim or expense has agreed to a different treatment of its claim.
> ….
>     3.1.2 **Debtor's Attorney Fees.** The debtor's attorney's fees shall be paid as follows:
> ….

---

[1] All statutory references are to 11 U.S.C.
[2] These findings are taken from stipulated facts, along with exhibits admitted at the hearing. The Court also took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket").

> (5) Any fees requested in addition to the pre-application fees shall be paid by the trustee only after approval by the Court . . . .

Counsel's first fee application, covering work performed through confirmation of the plan, was approved by the Court in November, 2011. The approved fees were provided for and paid "in" the plan.

Debtors needed more legal work in mid-2015 because they totaled their car, which they were paying off through the plan. Counsel promptly performed the work needed to modify the plan. Work related to the wrecked car was completed by mid-October, 2015.

On November 9, 2015, the Trustee sent a notice that the last plan payment would be due about six months hence. The purpose of the notice was to prompt Debtors to file a financial management course completion certificate. Counsel conceded, however, that such notices typically alert him to file any final fee applications.[3]

On April 12, 2016, the Debtors made their 60th and final plan payment. Two days later, the Trustee issued a notice that Debtors "made all plan payments and [have] complied with all requirements as stated in the Chapter 13 plan as confirmed and/or modified …. The Trustee's Final Report and Account will be filed as soon as all disbursements to creditors on behalf of the debtors in the above referenced case have been accounted for and no outstanding disbursements remain."

---

[3] At the final hearing, counsel said that he waited until the end of the case because there typically is some work that needs to be done to wrap the case up (e.g. drafting and filing the financial management certificate). Usually the work is not enough to justify a separate fee application, so counsel does it for free. Here, since a supplemental fee application was required anyway, counsel decided to wait until he could also include the end-of-case work.

On April 22, 2016, Counsel filed his supplemental fee application, requesting approval and allowance of $1,861.41 in attorney fees and costs for work between July 28, 2015 and April 21, 2016.[4]

Debtors paid about $30,000 into their plan, which the Trustee used to pay all allowed administrative expenses, secured claims, and priority claims. In March and April, 2016, the Trustee also paid about $244 to general unsecured creditors.[5] Had Debtors wished to pay the supplemental fees through the plan, they would have had to contribute an additional $1,750 or so,[6] assuming the application had been filed before the Trustee had paid $244 to unsecured creditors.

The Trustee has not yet filed her final report and Debtors' discharge has been halted, both pending resolution of this contested matter.

## II. DISCUSSION

A. Allowance of the Fees.

In Chapter 13 cases, the Court may allow:

> reasonable compensation . . . for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B). The factors to weigh when evaluating fee requests are set forth in § 330(a)(3), and also in the Tenth Circuit's "adjusted lodestar" analysis. *In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1246-47 (10th Cir. 2013); *In re Fincher*, 2012 WL

---

[4] Most of the work was on two amendments to the plan. Counsel also seeks compensation for about an hour of "plan completion" work, e.g., corresponding with the debtors and drafting a financial management course certificate.

[5] The Trustee refunded $99.13 to the Debtors on April 14, 2016. She still holds $122.52 of Debtors' funds, a portion of which she believes was improperly withheld from Debtors' paycheck after the last plan payment was made.

[6] This figure includes estimated trustee fees.

1155719, at *6 (Bankr. D.N.M.) (applying lodestar analysis to Chapter 13 attorney fees). The Trustee does not dispute that the fees were necessary, beneficial, and reasonable.

      B.      <u>Laches</u>.

The Trustee objected to the fee application because of the delay in getting it on file, a laches-type argument. To prevail, the Trustee must show an inexcusable delay in filing the fee application, and also that Debtors were prejudiced by the delay. *See In re Reinhart*, 477 F. App'x 510, 522 (10th Cir. 2012); *Brooks v. Bank of Boulder*, 911 F. Supp. 470, 477 (D. Colo. 1996) ("Lapse of time alone . . . does not constitute laches. . . . [Laches] will be applied only where the enforcement of the right asserted will work injustice"), *citing Shell v. Strong,* 151 F.2d 909, 911 (10th Cir. 1945).

          1.      <u>Inexcusable Delay</u>. Laches requires a finding that counsel inexcusably delayed filing his supplemental fee application. There certainly was a delay in getting the application on file. Debtors' counsel admits that, but has an excuse—he wanted to bill and be paid for the end-of-case work. The Court finds this excuse plausible and legitimate.

Bankruptcy courts have the inherent authority to set deadlines for filing fee applications, and a number of courts have done so. *See, e.g., In re Wilson*, 2007 WL 4248134, at *8 (Bankr. N.D. Ohio) (chapter 13 debtors' attorney should submit fee applications within 30-45 days of completing work, or quarterly); *In re Alda*, 2010 WL 4924615, at *4 (6th Cir. BAP) (court had authority to set deadline to submit fee application). Other courts have declined to set a deadlines in all cases, because a proper deadline may depend on case-specific circumstances, e.g., the size of the plan payments, size of attorney fees, and whether payments could be diverted from general unsecured creditors. *See, e.g., In re Cripps*, 549 B.R. 836, 850 (Bankr. W.D. Mich. 2016) (court has authority to set deadline for counsel to file fee application, but declined to do so under

-4-

circumstances of the case). There was no deadline for debtors' counsel to file a fee application in this case.

The Court will not set an *ex post facto* deadline. *See generally In re Cripps*, 549 B.R. at 849 (fee application filed after debtors completed plan payments was allowed under § 330, because no deadline to file applications had been set). The Court finds that there was no inexcusable delay in filing the fee application.

2. Prejudice. The Trustee argues that Debtors were prejudiced by the application timing because plan payments could have been used to pay fees rather than unsecured creditors; because allowing the fees would render the plan infeasible; and because having to pay the fees would delay Debtors' fresh start. Although the Court finds there is no inexcusable delay, the Court will address each prejudice argument.

a. Payments to Unsecured Creditors. The Trustee first argues that Debtors were prejudiced because the tardy filing meant that money was paid to unsecured creditors that could have paid the supplemental fees. The Court overrules the argument. Debtors would have had to contribute more money to their plan even if the application had been filed last October. Only $244 could have been diverted to pay counsel's supplemental fees, about $1,750 less than needed. Although in a different case, with different facts, debtors might be harmed by a similar six-month delay, the harm in this case was *de minimis*.

b. Feasibility. The Trustee next argues that allowing the fees would render the plan "infeasible." The Court cannot agree. Feasibility is a confirmation or modification requirement;[7] no feasibility objection can be made now. More to the point,

---

[7] Section 1325(a)(6) requires that a court should only confirm a plan if "the debtor will be able to make all payments under the plan and to comply with the plan." A feasibility objection, i.e., that a debtor cannot comply with the plan or make the plan payments, should be made at confirmation or upon a motion to modify while plan payments are ongoing.

allowing the fees would not cause Debtors to default under their plan. Rather, "it has generally been held that a plan is 'complete' when the debtor makes all the payments to the trustee." *In re Sounakhene,* 249 B.R. 801, 804 (Bankr. S.D. Cal. 2000); *In re Ezzell*, 438 B.R. 108, 115 (Bankr. S.D. Tex. 2010) (to the same effect, citing *Sounakhene*); *In re Phelps,* 149 B.R. 534, 538 (Bankr. N.D. Ill. 1993); *In re Moss*, 91 B.R. 563, 565 (Bankr. C.D. Cal. 1988). The Debtors made all required plan payments and otherwise complied with the plan. The Debtors earned the right to a discharge, which cannot be taken away. *In re Ezzell*, 438 B.R. at 115-116 (citing *In re Meza*, 467 F.3d 874, 878-9 (5th Cir. 2006)). *Cf. In re Rivera*, 177 B.R. 332, 335 (Bankr. C.D. Cal. 1995) (debtors who made all plan payments but did not make the required minimum distribution to unsecured creditors did not complete the plan).

Earlier in the case, Debtors' plan could have been modified to increase plan payments and pay the supplemental attorney fees, or to provide that the fees would be paid outside the plan. The plan may not be modified after the completion of plan payments. § 1329(a); *In re Ezzell*, 438 B.R. at 115-16.

   c. <u>Fresh Start</u>. Third, the Trustee argues that approval of the fee application would impair Debtors' fresh start. Not so. As discussed below, Debtors are entitled to entry of a discharge order. Their fresh start will begin once the order is entered. While Debtors may elect to pay the supplemental fees at issue, and/or to voluntarily delay entry of the discharge order while they pay the fees, they do not have to do so. If Debtors elect to pay the fees, they will pay little or no more than if the application had been filed in October, 2015.

For the reasons set out above, the Court overrules the Trustee's laches argument.

C. <u>Discharge</u>.

The Trustee also argues that the supplemental fees should be disallowed because they will be discharged. The Court agrees that the fees are subject to discharge. "A chapter 13 discharge discharges the debtor 'from all unsecured debts provided for by the plan…' if the debtor completes the plan." *In re Hanson*, 223 B.R. 775, 778 (Bankr. D. Or. 1998) (quoting § 1328(a)). Section 1322(a)(2) requires that a plan "provide for full payment… of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim." Generally, attorney fees are administrative expenses entitled to priority under § 507(a)(2) and must be provided for in the plan, unless the attorney agrees otherwise. *In re Busetta-Silvia*, 314 B.R. 218, 222–23 (10th Cir. BAP 2004).

"[P]rovide for" means that "the plan makes a provision for the claim or deals with the claim or refers to the claim – not that the claim is actually paid." *In re Hanson*, 223 B.R. 775, 779 (Bankr. D. Or. 1998) (quoting Vol. 3, Keith Lundin, *Chapter 13 Bankruptcy* § 9.16 at 9-29 n. 142 (2d ed. 1994)); *Lawrence Tractor Co. v. Gregory (Matter of Gregory)*, 705 F.2d 1118, 1122 (9th Cir. 1983) ("[T]he phrase 'provided for'… simply requires that for a claim to become dischargeable the plan must 'make a provision for' it, i.e., deal with it or refer to it."). *See also In re Johnson*, 344 B.R. 104 (9th Cir. BAP 2006) (attorney fees not discharged where plan specified that fees were to be paid outside plan).

Attorney fees are discharged if the plan provides for them and the fee application is not submitted until after plan payments are completed. *In re Carter*, 2006 WL 6588999, at *2 (Bankr. N.D. Ga.) ("Mr. Bowen's claim is one for payment of an administrative expense under the plan and as such is limited to the funds available to pay such expenses. The claim, if allowed, could not be paid because it was not asserted until after the Trustee had disbursed all payments in accordance with the plan. Hence, the claim, if allowed, would be discharged."); *In*

*re Rios*, 2006 WL 6811006, at *3 (9th Cir. BAP 2006) ("[A] debtor who has provided for full payment of priority claims in his or her plan is entitled to discharge of priority debts that have not been paid in full when the priority claimant filed its claim after completion of the debtor's chapter 13 plan payments."); *In re Cripps*, 549 B.R. at 862-63 (attorney fees would be discharged where fee application was submitted after last plan payment was made, but before discharge entered).

Debtors' plan provides for allowed attorney fees to be paid "in" the plan. There is no provision for any attorney fees to be paid "outside" the plan. Because counsel's supplemental fees are provided for in the plan, they will be discharged upon entry of the discharge order.[8]

The fact of imminent discharge should not prevent allowance, however. *See, e.g., In re Sweports, Ltd.*, 777 F.3d 364, 365 (7th Cir. 2015) (bankruptcy court should determine attorney's entitlement to fees, even if not ordering payment of fees); *In re Kavanaugh*, 2016 WL 3355850, at *1 (Bankr. D. Me.) (court allowed attorney fees under § 330(a), whether or not attorney was entitled to payment). The fees were reasonable, necessary, and beneficial to the estate, and should be allowed, dischargeable or not.

    D.    <u>Award and Allowance of Fees</u>. The Court will award Debtors' counsel supplemental fees and costs, pursuant to § 330(a)(4)(B), of $1,861.41. This amount will be allowed as an administrative expense under § 503(b)(2).[9]

---

[8] Nothing prevents Debtors from voluntarily paying the allowed supplemental fees after the discharge order is entered. *See In re Cripps*, 549 B.R. at 863 n. 31 ("An attorney is not, however, precluded from accepting a strictly voluntary payment from a debtor post-discharge, so long as the fees and expenses have been approved by the court. 11 U.S.C. § 524(f)").

-8-
Case 11-11696-t13    Doc 119    Filed 10/04/16    Entered 10/04/16 16:15:16 Page 8 of 11

E.  Proposed Practice Changes.

The Court does not believe it advisable to set a deadline for filing post-confirmation fee applications in chapter 13 cases; there are too many variables, and there may be instances when debtors need legal work very late in a case. If debtors are willing to pay a reasonable fee for the work, the Court should not set deadlines that could render such services hard to obtain. Instead of Court-set deadlines, the Court recommends that chapter 13 debtors' attorneys consider taking one or more of the following steps:

- Include a plan provision for a small administrative expense reserve (about one hour of attorney time), enough to pay for routine end-of-case work. *See In re Cripps*, 549 B.R. 835, 865 (Bankr. W.D. Mich. 2016) (debtor could propose escrow for additional administrative expenses); *In re Kavanaugh*, 2016 WL 3355850, at *1 (Bankr. D. Me.) (plan included an administrative expense reserve); *In re Meadows*, 297 B.R. 671 (Bankr. E.D. Mich. 2003) (administrative expense reserve). The reserve fee could be approved in advance by the confirmation order or the order approving counsel first fee application, so estate resources would not have to be wasted preparing a supplemental fee application for an hour's work at the end of the case;

---

[9] Approved attorney fees under § 330(a)(4)(B) "shall" be administrative expenses, unless the claim is untimely. § 503(b)(2). *See also In re Gantz*, 209 B.R. 999, 1003 (10th Cir. BAP 1997) ("Attorney's fees are allowed (or denied) under 11 U.S.C. § 330, and to the extent they are rendered and allowed in connection with the bankruptcy case, are administrative expenses."); *In re Meadows*, 297 B.R. 671, 672 (Bankr. E.D. Mich. 2003) (same); 4 Collier on Bankruptcy, ¶ 503.09 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (compensation awarded under § 330 is entitled to priority status as administrative expense). *Cf. In re Cripps,* 549 B.R. at 849 (court allowed fees under § 330 but declined to treat them as administrative expenses, holding that there was an implied deadline to file all fee applications before debtor makes the last plan payment).

- If possible, counsel should file any final fee application shortly after the Trustee files her notice that the final plan payment is due in six months. In any event, counsel should file the final application before the debtors make their last plan payment;

- The original plan could include language that attorney fees approved near the end of the case would be paid "outside" the plan, even though the fees would still have to be approved under § 330(a). *See In re Johnson*, 344 BR 104 (9th Cir. BAP 2006) (a plan may provide expressly that attorney fees will be nondischargeable and treated outside the plan); *In re Rios*, 2006 WL 6811006, at *3 (same);[10] and

- In cases without the proposed plan language suggested above, if the debtors can't increase plan payments enough to pay the supplemental fees "in" the plan, counsel could amend the plan so the supplemental fees are paid "outside" the plan. *See In re Rios*, 2006 WL 6811006, at *3 (9th Cir. BAP 2006) (to avoid discharge of fees "provided for" in the plan, debtors could have amended the plan to provide that additional fees would be paid outside the plan). An application for fee allowance under §330(a) and FRBP 2016 would still be required.

### III. CONCLUSION

Pursuant to § 330(a), counsel shall be awarded supplemental fees in the amount of $1,861.41. The awarded fees shall be allowed as an administrative expense under § 503(b)(2). When the discharge order is entered, Debtors' obligation to pay the supplemental fees will be

---

[10] The following plan language might work:
> Before the last scheduled plan payment, Debtor's counsel will file an application for approval and payment of any fees incurred after confirmation. Any such fees approved by the Court shall be paid by the trustee if she has enough funds to do so; otherwise, the fees (a) shall be paid by the Debtor "outside the plan;" (b) shall be deemed not to have been provided for by this Plan; and (c) shall not be discharged when the discharge order is entered. This provision does not apply to the end-of-case fee reserve set out in paragraph __ above.

discharged. The Court therefore will hold a hearing in the near future, with Debtors in attendance in person or by telephone, to discuss when the discharge order should be entered.

A separate order will be issued.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 4, 2016

Copies to:

Ronald E. Holmes
320 Gold SW, Ste. 1111
Albuquerque, NM 87102

Kelley Skehen
625 Silver Ave. SW, Ste. 350
Albuquerque, NM 87102

Michael Allyn Conner
Lyndee Christine Conner
3344 Zia Ct. NE
Rio Rancho, NM 87144